2024 IL App (1st) 241403-U

SECOND DIVISION
October 15, 2024

Nos. 1-24-1403B, 1-24-1404B, 1-24-1405B and 1-24-1406B, Cons.

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24CR3155 |
| | ) | |
| RANDY WASHINGTON, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | and Ankur Srivastava, |
| | ) | Judges Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held:*    Affirming the trial court's order denying pretrial release, where the State sustained its burden of showing clear and convincing evidence that defendant committed a detainable offense, that he poses a safety threat, and that no condition or combination of conditions could mitigate that threat.

¶ 2    Defendant, Randy Washington, appeals the trial court's order granting the State's motion for pretrial detention. The record shows that defendant was charged with various offenses, including aggravated robbery and robbery, in connection with a series of robberies of the same

convenience store, which occurred on January 19, 2024, January 26, 2024, and January 28, 2024 (the convenience store robberies); and another robbery of a Subway restaurant, which occurred on January 26, 2024 (the Subway robbery).

¶ 3    The record shows that defendant was arrested on a separate charge of domestic battery on March 4, 2024, in DuPage County. On April 5, 2024, detectives investigating the convenience store robberies learned that defendant was planning to plead guilty to the domestic battery offense, in exchange for a sentence of probation. Defendant was then arrested and indicted for offenses relating to the convenience store robberies.

¶ 4    The next day, on April 6, 2024, the State filed a petition for a pretrial detention hearing, and the Honorable Ankur Srivastava held a hearing on the petition. At that hearing, the court initially asked for information regarding defendant's pretrial services assessment. The representative for pretrial services responded: "New criminal activity, 6; failure to appear, 3; PSA score coincides with supervision Level 3."

¶ 5    The State then proffered that at about 1:50 a.m. on January 19, defendant approached a clerk working alone behind a convenience store counter, lowered a face covering, and presented a bottle of water for purchase. After the clerk opened the cash register, defendant lunged forward and tried to take cash out of the register. When the clerk tried to run, defendant went behind the counter and punched her twice in the face with a closed fist. Defendant took about $200 from the register and some Newport cigarette packs. He left the store and got into a black minivan.

¶ 6    Thereafter, on January 26 at 12:30 a.m., defendant returned to the same store wearing a black hoodie, with his face visible. The same clerk was working, and she recognized defendant from the first robbery. Defendant went straight behind the counter and ordered the clerk to lay down. Defendant put his hand in his pocket and threatened the clerk that he would shoot her if she

did not comply. Defendant took about $200 from the cash register and Newport cigarettes. He left the store and got into a red minivan. The minivan was captured on Police Observation Device (POD) camera footage, and an investigation revealed that the vehicle was registered to the mother of defendant's girlfriend.

¶ 7 Subsequently, at 4:40 a.m. on January 28, defendant returned to the same store, where again, the same clerk was working. Defendant was wearing a gray hoodie with his face visible, and the clerk recognized him as the same offender from the other robberies. Defendant went behind the counter, grabbed the victim by her hair, and ordered her to open the cash register. After the clerk complied, defendant punched her about the head three times and pushed her to the ground. He took Newport cigarettes and about $200 from the cash register. He left the store and got into the same red minivan. The clerk viewed a photo lineup on February 3, 2024, but she did not make any identification.

¶ 8 Soon after the third convenience store robbery, around 6 a.m., defendant proceeded to his girlfriend's house. Defendant and his girlfriend "got into a verbal altercation" and defendant pulled the girlfriend's hair out before fleeing from the scene in the red minivan. Defendant's girlfriend called the police and reported defendant for domestic violence.

¶ 9 Detectives then followed up on investigation into the red minivan. On or about February 24, 2024, police stopped defendant's girlfriend, who was driving the red minivan, and she was taken into custody. Officers brought defendant's girlfriend to the police station and showed her still images and video from one of the robberies, and asked her if she recognized the offender. Defendant's girlfriend positively identified defendant. Detectives also obtained a search warrant for the vehicle, in which they recovered one black hoodie and one red hoodie.

¶ 10    Thereafter, defendant was arrested on March 4, 2024, in Elmhurst, for domestic battery. The State asserted that the offense was currently pending in DuPage County.

¶ 11    The State informed the court that defendant had two 2015 aggravated robberies for which he was sentenced to 15 years imprisonment, and defendant had been discharged on parole in August 2023. Defendant also had a 2010 conviction for "aggravated resisting," for which he received two years imprisonment; a 2009 "unlawful vehicular evasion [*sic*]" for which he was sentenced to six years and six months IDOC; and a 2008 burglary conviction, for which he received three years imprisonment. Finally, defendant had a 2015 misdemeanor conviction for criminal trespass to a vehicle, for which he was sentenced to one year of probation.

¶ 12    Based on the above proffer, the State maintained that "defendant poses a real and present threat to the safety of any person, persons in the community" and that no condition or combination of conditions could mitigate that threat.

¶ 13    In response, defense counsel argued that the State had not shown that defendant committed the offense because they had not submitted the POD footage, there were no testifying eyewitnesses at the hearing, and defendant had not been arrested at the scene. Defense counsel also noted that the evidence suggested that the offender got "in a black minivan, and then it switches to a red minivan," and that the victim was not able to identify defendant in the photo lineup.

¶ 14    As to defendant's dangerousness, defense counsel argued that defendant is a 33-year-old lifelong resident of Cook County, and he has two children. He has a certificate in plumbing, was employed, and worked with a community nonprofit. Defense counsel continued:

> "he does have a place with electronic monitoring. We believe that this is a case where if your Honor places my client on electronic monitoring or places him on Pretrial Services Level 3 that would ensure that my client does come to court, and

4

that if there's any threat to any person or persons, that the threat would be alleviated. We're asking for to you deny the State's petition."

¶ 15    In ruling on the State's motion, the court noted that both aggravated robbery and robbery were eligible offenses under the Act, and concluded that the State had met its burden of showing clear and convincing evidence that defendant had committed those offenses. The court observed that the three robberies were "similar in nature in the way in which they were committed," in particular that the offender took cash from the cash register and Newport cigarettes. The court acknowledged that the victim was unable to identify defendant, however, the court explained that the red minivan had been captured on POD camera footage, and that the minivan was linked to defendant's girlfriend's mother. Moreover, when officers searched the vehicle, they obtained two hoodies, like the ones alleged to have been worn by the offender. Finally, the court observed that defendant's girlfriend identified him on still images and video from one of the robberies.

¶ 16    The court further observed:

"I'm also going to note here that in a criminal trial, we don't consider what's called propensity evidence. But at this stage, I do. *** [I]n addition to [the State's proffer], [defendant] ha[s] a pending robbery case and two aggravated robbery convictions [in his] background already. So at this stage of the proceeding, that makes me believe it's more likely that [defendant] committed [these] three robberies as well. In any event, the State's met its burdens on [the] first prong."

¶ 17    As to defendant's dangerousness, the court explained that

"These are violent crimes. The victim is battered, struck in the head, pushed to the ground. There's a threat to kill the victim during one of those

robberies. There's an indication that [defendant] put [his] hand in [his] pocket at the time and threatened her indicating perhaps that [defendant] had a firearm. I'm taking all that into account in the context of [defendant] having a pending domestic battery case which is a crime of violence, a pending robbery case which is a crime of violence, and then [his] very significant criminal history which also contains multiple convictions for crimes of violence."

¶ 18    Finally, the court explained that the "last consideration" was "whether there are any conditions I can impose to mitigate the threat [defendant] pose[s] to the community." The court observed that it could impose conditions "such as electronic monitoring," however, the court did not think that such conditions would be sufficient, because defendant would still "have access to the community." Additionally, the court did not believe that defendant would comply with such release conditions, "because of how many robberies occurred" and "because of [defendant's] other pending cases." The court further explained that, "frankly, you served a 15-year sentence on your last aggravated robbery. That was not sufficient to det[e]r you from committing another one. So I certainly don't believe the types of conditions I can impose would be sufficient to deter you."

¶ 19    Accordingly, the court found that the "the State has met their burden," and ordered defendant to be detained pretrial.

¶ 20    That same day, the trial court entered a written order, consistent with the above findings.

¶ 21    Thereafter, defendant was charged with another offense, relating to a robbery of a Subway restaurant on January 26, 2024. The State filed another pretrial detention hearing as to that offense on April 24, 2024. A hearing was held that same day before the Honorable Mary Margaret Brosnahan.

¶ 22    At that hearing the State proffered that on January 26, 2024, at 3:46 a.m., defendant entered the Subway restaurant, waited for the last customer to leave, then ordered a sandwich and handed the cashier a $20 bill. The cashier opened the cash register, then defendant slammed his hand on the drawer and told the victim to "get the f*** back." He ordered the victim to unlock the register's latch, and the victim complied. Defendant then ordered the cashier to lie face down on the floor. Defendant took $450 from the register and $20 from the cashier. Defendant tried to conceal the tattoo under his left eye by covering it with his hand. The incident was captured on restaurant video.

¶ 23    As defendant left the Subway restaurant and cut through a parking lot, he was captured on footage from a nearby bank. He got into a maroon Dodge Caravan, which was captured on POD footage as he drove down Roosevelt Road, and a "plate reader." That vehicle was the same which was being investigated in connection with the convenience store robberies.

¶ 24    Detectives issued a seeking-to-identify bulletin based on the surveillance video, and a detective familiar with defendant, who was investigating the other three robberies, identified defendant. Detectives learned that the same minivan was involved in both the convenience store robberies, and the Subway robbery.

¶ 25    The court then asked the State about the other robberies that defendant was charged with, and the State informed the court of the nature of the convenience store robberies, consistent with the facts proffered at the April 6, 2024, hearing.

¶ 26    The court then asked the State about defendant's criminal background. The State responded that he had a 2015 aggravated robbery conviction which "was amended down from an armed robbery," for which he received 15 years imprisonment. The parties believed that his "out date," was in 2022, but they were not sure if he was "still on parole" for that conviction. In addition,

defendant had a 2010 "aggravated resisting a peace officer" conviction, which was reduced from aggravated battery of a corrections officer, for which he received a sentence of two years imprisonment. That offense was "served consecutively to a 2009 unlawful vehicular invasion" conviction, for which he received six years and six months imprisonment. Finally, the State noted that defendant "also has a 2008 burglary" conviction, for which he received "Cook County Department of Corrections boot camp," which was "converted to three years in the Illinois Department of Corrections." Defendant also had two misdemeanor convictions, including the 2024 domestic battery, for which he received probation, and a 2015 criminal trespass to vehicle, for which he also received probation, terminated unsatisfactorily.

¶ 27 The State argued that the proof was evident and the presumption great that defendant committed the eligible offense of robbery, based on the evidence showing that he was "captured on video surveillance from the Subway as well as the POD video and the video leaving that area, going to the minivan" which was registered to "the mother of his ex-girlfriend." The State also argued that he posed a "real and present threat to the safety of any person or persons in the community based on the facts of this case" and defendant's "extensive background." The State noted that defendant was currently charged with four robberies in the community, and argued that no condition or combination of conditions could mitigate the risk posed by defendant, and that if he was allowed to be released on electronic monitoring "he's allowed movement and he can go out and commit these same offenses."

¶ 28 Defense counsel responded that the "case at issue" involved the robbery of Subway, and not "the other three cases that have already been dealt with." Defense counsel argued that the State had not shown that the proof was evident or presumption great that defendant had committed the offense, because the victim "was a Subway employee who did not know" defendant, and it

8

"doesn't sound like an ID occurred in this case."

¶ 29    Regarding defendant's background, defense counsel argued that his prior convictions were "remote," where the "2015 case is nearly ten years old at this point" and the rest of his convictions were "over ten years old."

¶ 30    Defense counsel further stated that defendant "is 33 years old," that he has "a four-month-old son *** and a 15-year-old son," and that he's been working at "a factory job." Defense counsel asserted that defendant had diagnoses for "bipolar [disorder] and depression," that he takes medication for those diagnoses, and that, "as part of his probation, is ordered to do drug and alcohol classes." Defense counsel stated that the court "can order electronic monitoring without any movement, which would mitigate the State's main concern in that he be able to commit new offenses."

¶ 31    In ruling on the State's petition, the court noted that, at a pretrial detention hearing, the State was not required to prove defendant's guilt beyond a reasonable doubt. Instead, the court would consider "proffers made by the State, as well as the defense, as to what they believe the evidence will or will not show." Based on the proffers before the court, the court determined that "the proof [is] evident and the presumption great that the defendant committed the offense." The court noted that the offense was captured on surveillance video, and that the proffers showed that defendant had committed similar offenses on January 19, January 26 and January 28 at a different location.

¶ 32    The court also believed, based on the evidence provided by the State, and defendant's "extensive criminal background" that there were "no condition[s] or combination of conditions that the court could employ that would safeguard both the individual complaining witnesses in these separate cases as well as the community at large." Accordingly, the court ordered that

defendant be detained pretrial.

¶ 33   That same day, the court entered a written order, consistent with the above findings. In particular, the court noted that the State had met its burden of showing that defendant had committed the Subway robbery, including ordering the victim to the floor and taking $450 from the register, and that the offense was captured on video. The court found that defendant was a safety threat to the "specific victims and [the] community in general" based on the nature of the offense described above, and the fact that he was also charged with three other robberies in the early morning hours at a convenience store. The court also explained that there was no condition or combination of conditions that could mitigate the safety threat, based on the facts of the cases and defendant's extensive criminal background.

¶ 34   On June 27, 2024, defendant filed two motions for relief under the Pretrial Fairness Act, one relating to the detention order filed by Judge Srivastava regarding the convenience store robberies, and the other order relating to the detention order filed by Judge Brosnahan regarding the Subway robbery. Among other arguments that will be discussed more fully below, defendant generally asserted that in both proceedings, the State failed to meet its burden of showing that he had committed the offenses charged, that he posed a safety threat, and that no condition or combination of conditions could mitigate that threat.

¶ 35   The next day, on June 28, 2024, the matter appeared in front of Judge Brosnahan for hearing. Initially, Judge Brosnahan noted that one of the rulings to detain had been made by Judge Srivastava, and asked if the parties were in agreement that the transcript of both proceedings, and the orders entered by both judges, should be admitted and made part of the record. The parties agreed.

¶ 36   Regarding the proceedings before Judge Srivastava on April 6, 2024, defense counsel

argued that the court erred in finding that the proof was evident or presumption great that defendant committed the offense because

"[t]he complaining witness for these three robberies was unable to identify [defendant] in a photographic lineup. *** [T]here's no physical evidence, DNA, fingerprints tying [defendant] to any of these robberies.

I'll note that looking at these three robberies together, there's two different vehicles that are being used. A black minivan at one point, a red minivan at another point. And *** there is a *Thompson* identification *** conducted by the complaining witness in an unrelated domestic battery.

The officers bring her to the police station and *** show her one of the videos from January 26th and ask her, do you recognize this person? And allegedly she says it's [defendant]. *** I would ask the Court to treat that as suspect because *** these are adverse parties involved in an ongoing litigation. That it is not reliable for purposes of clear and convincing evidence to rely on a *Thompson* identification committed by a potentially interested party."

¶ 37   Defense counsel also argued that the "most obvious" error was that the

"State failed to meet its burden by clear and convincing evidence that no condition or a combination of conditions can mitigate the real and present threat to the safety of any person or persons in the community. The State has a burden to establish, aside from simply restating the alleged facts that resulted in the charge, at a minimum some discussion, reasoning or evidence as to why specific alternative conditions won't work."

¶ 38     Counsel asserted that "[t]here was no discussion by the State of why, *** [defendant] would not abide by a curfew, [or] abide by electronic monitoring," and accordingly, defendant maintained that the State had "waived" that argument.

¶ 39     Regarding the April 24, 2024, proceeding before Judge Brosnahan, defense counsel argued that the court had erred in finding that the proof was evident and presumption great that defendant committed the offense because

> "the complaining witness did not identify [defendant]. There was no physical evidence tying him to these robberies. The POD video was not admitted, and there was a *Thompson* identification *** completed by a detective who,*** I assume it's the detective who is working on the other three matters, viewed the video pertaining to this matter and said that's [defendant]. And for clear and convincing evidence, Judge, my argument today is that's just not enough."

¶ 40     Defense counsel also argued that the State had failed to meet its burden to show that the safety threat posed by defendant could not be mitigated by a less restrictive condition or combination of conditions. Counsel maintained that "the State simply stated that if he's on electronic monitoring, *** he's allowed movement, and he could go out and commit these same offenses. *** [T]here was no explanation of why in this particular case [defendant] would not abide by the court's orders."

¶ 41     In response, the Assistant State's Attorney (ASA) contended that the State had properly shown all three prongs at the April 24, 2024, hearing before Judge Brosnahan. At the proceeding before Judge Srivastava, however, the ASA acknowledged that the State had improperly "merged" the argument as to "all three prongs into one generalized argument," and that it had not made a

12

specific argument as to the third prong, regarding whether any less restrictive conditions could be imposed. The ASA asked the court to allow the State to "cure that specific defect" by making the argument at the instant hearing.

¶ 42    The court then observed that Judge Srivastava had, in fact, made specific findings as to the third prong in his written order. The court read from Judge Srivastava's order:

> "[l]ess restrictive conditions would not avoid a real and present threat to the safety of any person or persons in the community, based on the articulable facts of the case because defendant previously served a 15-year sentence for aggravated robbery and committed another one, suggesting he's unlikely to be deterred by any conditions imposed by this court. Defendant also has two other cases pending, both crimes of violence, suggesting inability to comply with law."

¶ 43    The ASA agreed that "the Court made the correct finding" but maintained that "the State *** did not do the correct argument."

¶ 44    As to the State's request to cure a defect in its argument, defense counsel responded:

> "I think the appellate courts in these decisions – and this specific issue hasn't been addressed, but they have been reversing cases where the State failed to make the appropriate argument almost as a sort of waiver. I don't think they've used that specific word.
>
> So my argument would be even though the court went through the three findings and made findings based on those three factors, that if the court finds that the State did not present enough evidence that they don't have a future opportunity to do so. That it was, in fact, a one-time

13

opportunity."

¶ 45    The court then asked,

"Is it the defense position then that if the State fails to make an argument properly, *** [t]hat if it doesn't come out of the State's mouth properly, then the judge has absolutely no discretion to go ahead and weigh it properly based on the facts of all three cases put before them? Is that what you're saying, that *** a judge is bound if a State's Attorney screwed up the argument, *** on the detainable offense, be it a murder, armed robberies, aggravated robberies, aggravated vehicular hijackings, whatever it might be? That if the evidence all got in the record somehow but the State didn't separate it properly, that the judge has no discretion to use their own intelligence, if you will, to sift through everything presented to them and make a finding, that a judge can't do that? That they're stopped from making [findings] as Judge Srivastava did in [his written order]?"

¶ 46    Defense counsel agreed, "that is my argument, just based on the principles of waiver and forfeiture."

¶ 47    The State responded that waiver does not apply, because Illinois Supreme Court Rule 604(h) was recently amended to require an appellant to file a motion for relief in the trial court, and the trial court to hold a hearing on that motion, before an appeal. The State argued that it was illogical to require such a hearing if the court could not cure any defects that may have occurred in the prior hearing.

¶ 48    The court then allowed the State to make an argument as to the third prong. The ASA stated that electronic monitoring allows "two movement days," during which defendant could commit

crime. The ASA stated that the record showed that defendant did not just commit a crime once because he was "desperate" or "need[ed] money." Instead, "[h]e's committing robberies over and over and over again, twice [*sic*] at the same place, with the same victim. He's shown that he does not have the wherewithal to show self-control and to follow court orders."

¶ 49   In ruling on defendant's motion for relief as to her own order, Judge Brosnahan extensively set out the proffered facts from all four offenses, and stated:

> "Respectfully, Counsel, the motion for pretrial release is going to be denied. The court's order of April 24th of 2024 is going to stand and that order was to detain the defendant. I continue to find, despite the arguments addressed to the court, that the State did show by clear and convincing evidence that the defendant committed a robbery on [January 26, 2024], at the Subway store at 1232 South Canal. He ordered the victim to the floor and took $450 from the register. It's clearly an offense that qualifies as listed in the statute that was purportedly on video."

¶ 50   The court also found that defendant was a danger to the community generally, and to people who are "in convenience stores in the early morning hours." In particular, defendant was a danger to the clerk victim in three of the robberies, who was "obviously a pivotal witness in three of the cases."

¶ 51   Finally, the court explained that, although the court "start[s] with the supposition in each and every case that the defendant is entitled to pretrial release," in this case, the court "would have absolutely no faith at all if [it] released [defendant] that he would not be out making other people victims." The court believed that electronic monitoring or other conditions would be "much, much, much too big of a risk in this case," and that such conditions "would do nothing to deter the

defendant."

¶ 52    Finally, the court addressed the defense's argument that "because the State did not specifically break up and articulate the three different prongs, as case law now suggests should be done, that a judge is estopped from making a ruling based upon what they heard at the hearing." The court disagreed with the defense, finding that such an interpretation would "tie the hands of a judge, who would be at the mercy of whoever was articulating the facts for a prosecutor." The court agreed, that "obviously, information has to be presented to the judge with respect to all three prongs," but the court did not believe that "if the State doesn't argue it exactly point-by-point, a judge has absolutely no ability to take those same facts that came out of the State's mouth and make a ruling on their own based on their training, their experience of what they heard."

¶ 53    Instead, the court found that the "pivotal" issue was whether "the court ma[d]e the correct findings, did the court do the three separate prongs point-by-point in a ruling *** based on what was presented to the court." The court found that Judge Srivastava "clearly delineated that there was no condition or combination of conditions *** that can mitigate the threat of safety [posed by defendant]" and that the record "very clearly and sufficiently" included "more than enough" evidence "for him to make th[at] finding."

¶ 54    In so finding, the court declined to address whether the State was permitted to cure an alleged deficiency at the hearing on a defendant's motion for relief. Even if the State was not permitted to do so, "there was more than enough in the record for Judge Srivastava to properly make the findings that he made in his order." Accordingly, the court also denied defendant's motion for relief as to the order entered by Judge Srivastava.

¶ 55    Defendant filed a notice of appeal from that order on July 2, 2024, and on August 22, 2024, defendant filed a "notice in lieu of Rule 604(h) memorandum." In that notice, defendant elected to

stand on the motions for relief, and not file a Rule 604(h) memorandum. Accordingly, defendant's motions for relief shall serve as his argument in this appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (" "The motion for relief will serve as the argument of the appellant on appeal. *** Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed.").

¶ 56    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)). Upon the filing of a petition requesting an order denying a defendant's pretrial release, it is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e)(1)-(3). The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004). Although the applicable standard of review in a pretrial detention appeal has been the source of considerable disagreement in the Illinois appellate court (see *People v. Miller*, 2024 IL App (1st) 240588, ¶ 27), we need not resolve which standard of review applies in this case, as the result would be the same under any standard. We note, however, that the supreme court recently heard oral arguments in a case regarding the standard of review (*People v. Morgan,* 2024 IL App (4th) 240103, *appeal allowed*, 475 Ill.Dec. 462 (2024)), and we eagerly await guidance on the issue.

¶ 57    We first address defendant's arguments as to the first prong, regarding whether the State met its burden of proving by clear and convincing evidence that the presumption is great or the

proof evident that the defendant committed a detainable offense.

¶ 58    In the motion for relief directed at the order entered by Judge Srivastava regarding the convenience store robberies, defendant alleged that the State failed to meet that burden because the complaining witness was unable to identify him in a photo lineup, there was "no physical evidence, such as DNA or fingerprints," and the "*Thompson* identification" by a "[c]omplaining [w]itness in a pending domestic violence case [wa]s not a reliable source for a positive identification." And similarly, in the second motion for relief, as to the pretrial detention order entered by Judge Brosnahan as to the Subway robbery, defendant alleged that the State failed to meet its burden because the complaining witness did not identify him, there was no physical evidence, and the State "did not admit the POD video." Defendant also alleged that the "*Thompson* identification" of him by "an unknown Chicago Police Department detective [wa]s not a reliable source for a positive identification."

¶ 59    Here, the State's proffers established that defendant committed four robberies—three at a convenience store, and one at a Subway restaurant—within the course of nine days in the late night and early morning hours. The three convenience store robberies involved the same clerk victim, and during those offenses defendant took about $200 in cash and Newport cigarettes and fled in a minivan. During two of the robberies, defendant punched the clerk in the face, and during the other robbery, defendant ordered the clerk to the ground, put his hand in his pocket to suggest he had a gun, and threatened to shoot the clerk. At least one of the convenience store robberies was captured on video, and defendant's escape in a red minivan was captured on POD camera footage. Although the clerk was not able to identify defendant in a photo lineup, defendant's girlfriend was shown video footage and still photographs from one of the robberies, and she identified defendant as the perpetrator.

¶ 60    In the Subway robbery, defendant entered the restaurant, waited for the last customer to leave, then ordered a sandwich and handed the cashier a $20 bill. The cashier opened the cash register, then defendant told the victim to get back, and ordered the victim to unlock the register's latch and lie face down on the floor. Defendant took $450 from the register and $20 from the cashier. Defendant tried to conceal the tattoo under his left eye by covering it with his hand. The incident was captured on restaurant video. As defendant left the Subway restaurant, he was captured on video from surveillance by a nearby bank. Defendant's escape in a maroon Dodge Caravan minivan was also captured on POD footage and by a "plate reader." That same minivan was used in at least two of the convenience store robberies, and police investigation revealed that the minivan was registered to defendant's girlfriend's mother. After searching that minivan, officers recovered hoodies similar to the ones worn by the offender during the offenses.

¶ 61    Based on the facts presented here, we agree with the trial court's conclusion that the evidence was sufficient to sustain the State's burden of showing clear and convincing evidence that defendant committed the offense charged. At this stage, the State does not need to prove defendant's guilt beyond a reasonable doubt. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 13. Instead, the State need only show that the proof is evident or the presumption great that the defendant has committed a qualifying offense "by clear and convincing evidence." 725 ILCS 5/110-6.1(e)(1) (West 2022).

¶ 62    Defendant contends that the State did not meet its burden because there was no DNA or fingerprint evidence, and because it did not introduce the POD video at the hearing. Such evidence, however, would not be required, even under the more rigorous standard of proof beyond a reasonable doubt. See *People v. Williams*, 182 Ill. 2d 171, 192 (1998) ("Proof of physical evidence connecting a defendant to a crime has never been required to establish guilt."). And the Act

19

provides that the State need not actually introduce the underlying evidence at the hearing, and may satisfy its burden of persuasion by presenting evidence "at the hearing by way of proffer based on reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022).

¶ 63    Defendant also contends that Judge Srivastava erred in finding that the minivan, which was owned by defendant's girlfriend's mother, "linked" him to the offense, because "[s]imple proximity to someone who owns the offending vehicle does not 'link' someone to a crime.' " The trial court's determination that the vehicle "linked" him to the offense was not based on his "simple proximity" to the owner of the vehicle. Instead, defendant's escape in the minivan was captured on POD camera footage, and hoodies, similar to the ones defendant wore in the offenses, were found inside that vehicle.

¶ 64    We also note defendant characterizes the identifications by his girlfriend and by a detective as "*Thompson* identifications"—presumably referencing the supreme court's opinion *People v. Thompson*, 2016 IL 118667—to contend that they are "not *** reliable source[s]" of identification, In *Thompson*, the supreme court considered the admissibility of lay opinion identification testimony, in the context of an identification of a defendant from a surveillance recording and photographs. The supreme court held that such "opinion identification testimony is admissible under Rule of Evidence 701 if (a) the testimony is rationally based on the perception of the witness and (b) the testimony is helpful to a clear understanding of the witness's testimony or a determination of a fact in issue." *Id.*, ¶ 50. The court also expressly held that there "is no *per se* rule against admission of a law enforcement officer's identification testimony," and that when "the State seeks "to introduce lay opinion identification testimony from a law enforcement officer, the circuit court should afford the defendant an opportunity to examine the officer outside the presence of the jury *** to explore the level of the witness's familiarity as well as any bias or prejudice."

20

*Id.*, ¶¶ 56, 59.

¶ 65    At no point in this court, or in the trial court, did defendant explain *Thompson*'s relevance, or why he argues that the identifications by defendant's girlfriend and the detective would not be reliable under that case. And nevertheless, even if defendant intends to rely on *Thompson* at trial to argue that the identifications should be excluded, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information" at a pretrial detention hearing. 725 ILCS 5/110-6.1(f)(5) (West 2022).

¶ 66    Defendant also alleged that the court's finding that he committed the offenses was based on incorrect "reasoning that 'the robberies are similar in nature' " and that there was a " 'similar MO,' " or *modus operandi*, between the robberies. Defendant alleges that the only "indicators of a *modus operandi* were simply the hallmarks of robberies, generally," and that there were multiple differences in the robberies, including "multiple vehicles," "a face covering being used in one [robbery]," and the "threat of a weapon in [another]."

¶ 67    The record shows, however, that the offenses occurred within a timespan of a little over a week, and they all occurred in the early morning hours, between 12:30 and 4:40 a.m. Three of the offenses occurred at the same convenience store, and involved the same clerk. Defendant stole approximately $200 on each occasion, as well as a specific brand of cigarettes. The robbery at Subway was also similar to the convenience store robberies. Like in the first convenience store robbery, defendant initially acted as if he intended to make a purchase, inducing the cashier to open the cash register. And like the convenience store robbery which occurred that same night, defendant ordered the victim to the floor, as he took money from the cash register. Based on the proffered facts before the court, we find no error in the trial court's comment that the evidence of the robberies showed a "similar MO."

¶ 68    Finally, defendant alleged that Judge Srivastava erred in considering that he has a "propensity" to commit crime to conclude that it was more likely that he committed the offenses here. Defendant's argument is based on the comment by the court that it was "also going to note" that, although propensity evidence is not considered at trial, the court could consider it at the pretrial hearing. Defendant argues that there is no "caselaw or statutory exception to Illinois Rule of Evidence 404 permitting the court to consider propensity evidence," and that it would not make "logical sense for the court to consider propensity evidence for purposes of a pretrial release hearing" because "then the court could always conclude that the proof is evident or presumption is great simply because the defendant has a propensity to commit crime generally, so long as the defendant has a criminal record." The State responds that the court could properly consider evidence of propensity, because "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 725 ILCS 5/110-6.1(f)(5) (West 2022).

¶ 69    This court has found no cases analyzing whether a trial court is permitted to consider propensity evidence during a pretrial hearing. However, we need not resolve this issue because even if the court's comments were erroneous, those comments made it clear that it had already found that the State had met its burden as to the first prong, and that its comments on propensity were superfluous to, and not the basis for, that finding. Based on the strong evidence in the State's proffer, we conclude that the State satisfied its burden of showing by clear and convincing evidence that defendant committed a detainable offense, and the trial court's finding in that regard was not erroneous.

¶ 70    Defendant next alleges that the State failed to meet its burden of showing by clear and convincing evidence that he is a safety threat. Defendant's only arguments on this point, however,

are that in the hearing before Judge Srivastava, the State "solely presented arguments regarding the danger of robberies generally," and at the hearing before Judge Brosnahan, the court "failed to make a finding during its oral ruling that [defendant] posed a threat to a specific person or the community based on the articulable facts."

¶ 71    Pursuant to 725 ILCS 5/110-6.1(g), the circuit court may consider various factors in determining whether a defendant poses a real and present threat to the safety of any person or persons or the community. Those factors include the "nature and circumstances of any offense charged, including whether the offense is a crime of violence, [or] involv[ed] a weapon"; the "history and characteristics of the defendant" including prior criminal history; and "[a]ny other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior."

¶ 72    We disagree that the evidence before Judge Srivastava was limited to "the danger of robberies generally." Rather, the evidence before the court showed that defendant committed a series of very violent offenses, including punching the victim in the face during two of the robberies, and intimating that he had a firearm and threatening to shoot her during the other. The facts before the court also showed that defendant had an altercation with his girlfriend after one of the robberies, that he had pulled her hair out, and that he was arrested and charged with domestic battery. Moreover, defendant has an extensive criminal history, including two aggravated robberies for which he was sentenced to 15 years imprisonment. In these circumstances, and based on an analysis of the statutory factors, we agree with the trial court's conclusion that defendant poses a real and present safety threat.

¶ 73    Additionally, although Judge Brosnahan did not make a specific oral finding regarding defendant's dangerousness, the written order entered immediately following that hearing makes

23

clear that she found defendant to be a safety threat to the "specific victims and community in general" based on the violent nature of the offense, and the fact that he was also charged with the three convenience store robberies. Moreover, Judge Brosnahan reiterated that finding at the hearing on defendant's motion for relief.

¶ 74    Finally, defendant asserted that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate that safety threat, arguing that, in the hearings before both judges, the State did not explain why there were no other conditions of release that could mitigate any risk to the community, and, accordingly, the State "waived any such argument." Based on the evidence in the record, we agree with the trial court's conclusion that no condition or combination of conditions could mitigate the safety threat posed by defendant, and that pretrial detention was necessary.

¶ 75    Although the third prong, concerning which conditions if any would mitigate the defendant's dangerousness, is separate from the second prong regarding defendant's dangerousness, both prongs necessarily entail the consideration of many of the same or similar factors. See *People v. Brown*, 2024 IL App (5th) 240236-U, ¶ 33. In determining which conditions of pretrial release, if any, would reasonably ensure the appearance of the defendant, the safety of persons and the community, and the likelihood of defendant's compliance with terms of pretrial release, the statute provides factors for the trial court's consideration. See 725 ILCS 5/110-5(a) (West 2022). These include, among other things, (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community based on the articulable facts of the case that would be posed by the defendant's release. *Id.*

¶ 76    Here, the record shows that, as set forth above, defendant committed a series of very violent offenses, and that he has an extensive criminal history including aggravated robberies for which he was sentenced to 15 years imprisonment. Defendant, however, was not dissuaded by his lengthy prior incarceration, committing a series of robberies in a short time period, including three offenses against the same victim, and committing a domestic battery against his girlfriend. In these circumstances, we find no error in the trial court's decision that there were no conditions short of detention that could mitigate the safety threat posed by defendant.

¶ 77    In arguing that the State's failure to make a specific argument as to the third prong amounts to a waiver, defendant relies on *People v. White*, 2024 IL App (1st) 232245, ¶ 27. We find no authority in *White* for such a proposition, and find that case distinguishable in any event. In *White*, the appellate court reversed the trial court's order for pretrial detention where the State "effectively ignored the third statutory factor for denial of pretrial release," and presented "no evidence relevant to this third factor." *Id.*, ¶¶ 25, 27. In particular, the appellate court noted that the court ignored that defendant, who was charged with reckless homicide in connection with an automobile accident, had no previous criminal convictions, that he had been cooperating with a weekslong investigation into the offense, and that Pretrial Services recommended that he be released with pretrial monitoring while awaiting trial. *Id.*, ¶ 27.

¶ 78    Here unlike in *White*, defendant has an extensive criminal history, and in the instant offenses, he is accused of committing four robberies in the course of nine days. Additionally, Judge Srivastava was provided with defendant's pretrial services scores, which were described as: "New criminal activity, 6; failure to appear, 3; PSA score coincides with supervision Level 3." Although copies of the pretrial assessment report do not appear in the record on appeal, this court notes that in such assessments, "new criminal activity" and "failure to appear" are scaled out of a total of six,

and supervision level 3 corresponds with a recommendation of "maximum conditions." By contrast, the defendant in *White*'s PSA scores "were two of six, and Pretrial Services recommended release with pretrial monitoring, not detention." *Id.*, ¶ 8. And most importantly, here, even if the State failed to specifically articulate an argument on the third prong, it did present evidence relevant to that prong, and the circuit court detailed reasons as to why it found that less restrictive means would be insufficient to mitigate the threat defendant poses. Accordingly, we find no error in the court's finding that the State met its burden to show no condition or combination of conditions could mitigate the real and present threat he posed was reasonable and based on the evidence presented.

¶ 79 Finally, defendant contends that Judge Srivastiva made an erroneous written finding in his order that defendant had a "pending" domestic battery, and that he had "two other cases pending," when his domestic violence offense had been resolved and he had been placed on probation. Although it does not appear in the record on appeal, a review of the website for the 18th judicial circuit court clerk indicates that on April 5, 2024, one day before the hearing before Judge Srivastiva, defendant entered a guilty plea on a domestic battery charge, and was sentenced to probation. See *People v. Spencer*, 408 Ill. App. 3d 1, 10 (2011) ("A reviewing court may take judicial notice of factual evidence when the facts are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy"); *Edward Sims Jr. Trust v. Henry County Board of Review*, 2020 IL App (3d) 190397, ¶ 26, n.6 ("It is generally accepted that a court may take judicial notice of the information on a government website."). Although defendant apparently pleaded guilty the previous day, the record before Judge Srivastiva indicates that the State referred to the domestic battery charge as pending, and defense counsel did not correct that understanding. Nonetheless, defendant has made no argument, and we find no

26

basis to conclude, that the change in status from defendant's domestic battery case from being pending to resolved based on his guilty plea would have had any effect on the trial court's judgment.

¶ 80      For the foregoing reasons, we find no error in the trial court's decision to grant the State's petition for pretrial detention, and we affirm the judgment of the circuit court of Cook County.

¶ 81      Affirmed.